ROSE D. APRIL et al., Appellants and Respondents, *v.* PHILIP APRIL, Defendant, and JOSEPH G. ABRAMSON, as Trustee, Respondent and Appellant.

(Argued November 30, 1936; decided December 31, 1936.)

*Nathan L. Miller, Francis B. Delehanty, Jr., Monroe J. Cahn* and *Nathan Probst, Jr.*, for plaintiffs, appellants and respondents.

*Abraham J. Halpin, Clarence Horwitz* and *Henry Waldman* for defendant, respondent and appellant.

LEHMAN, J. The plaintiff in 1928 entered into a separation agreement with her husband, the defendant Philip April. It provides that Philip April should pay to his wife during her natural life the sum of $4,200 annually in monthly installments of $350 and the further sum of $3,000 annually in monthly installments of $250 for the support and education of their children. To secure the payment of $600 monthly the agreement provided for the transfer of specified property to the defendant Abramson as trustee and that the husband should transfer additional property as security, if the specified property proved insufficient. Until June, 1932, the wife received the stipulated payments of $600 per month. Then the payments ceased. The plaintiff, individually and as

guardian *ad litem* of the surviving daughter, brought actions to compel the defendant April to make the agreed payments and to augment the principal of the trust funds, and brought separate actions to compel the trustee to account. The actions were consolidated and after a trial an interlocutory judgment was entered which adjudged that the defendant April is obligated to pay to the plaintiff Rose D. April for her own support and maintenance the sum of $350 a month on the first day of each and every month so long as she may live and to pay to her the further sum of $250 per month for the support, education and maintenance of her daughter, the infant plaintiff, until her daughter shall reach the age of twenty-one years, and that the defendant April is obligated to augment the principal of the trust fund in manner provided by the separation agreement. It further adjudges that " under the terms of said agreement the defendant, Abramson, is obligated to pay to the plaintiff, Rose D. April, so long as she shall live, out of the income or principal of the trust funds in his hands under said agreement, so long as the same shall be sufficient in whole or in part, the sum of $350 per month " and that the trustee is obligated also to pay $250 per month for the support of the infant plaintiff " out of the income or principal of said trust funds in his hands under said agreement, so long as the same shall be sufficient in whole or in part." The interlocutory judgment further provided that the action be referred to a referee, named in the judgment, to take and state the account of the trustee and to report to the court as to the additional amount which the defendant April should transfer to the trust fund to secure the stipulated payments.

The referee reported, among other things, that upon the accounting by the trustee he should be surcharged with the sum of $55,829.14, with interest from March 1, 1933, and in addition should pay costs and expenses of the accounting totalling over $8,000. Upon motion of the plaintiffs, final judgment was entered in accordance with

the referee's report. Upon appeal to the Appellate Division the judgment was modified and the amount with which the trustee was surcharged was reduced to the sum of $13,740.05, with interest at the rate of three per cent. The court left intact the provision that the trustee should, in addition, be charged with the expenses of the reference, fees paid to counsel and accountants, and other incidental expenses. The plaintiff and the trustee have both appealed from the judgment as modified.

To set forth the details of all the items which must be considered upon the accounting would serve slight purpose and would result in an opinion of inordinate length. We confine ourselves in this opinion to a statement of the most important questions and a consideration of the largest items. In other respects we shall state only our bare conclusion, though we have carefully considered all the contentions raised by the parties.

The trustee as well as the husband and wife was a party to the separation agreement which names the husband as party of the first part, the wife as party of the second part and the trustee as party of the third part. The instrument includes a provision which is, in form, a present assignment to the trustee of the specified property which it was agreed should be held by the trustee as security for the stipulated payments. At the time of the execution of the assignment, the husband by separate instrument executed a formal assignment of that property to the trustee Abramson. Prior to that time the husband April, the defendant trustee Abramson and one Joseph Levy had been associated in business ventures which were so numerous that, in some respects, the association resembled a partnership doing a general real estate business. The associates owned all the stock, or at least a controlling interest, in a number of real estate corporations; they held undivided interests in real estate mortgages, and they had a bank account which stood

in the name of Abramson. The property described in the assignment to Abramson consisted of April's interest in these corporations, mortgages and bank accounts and "all other property of every nature and description in which I [April] am interested jointly with Joseph G. Abramson and /or with Joseph G. Abramson and Philip April [*sic*]." Abramson, an attorney, had been the active person in the association. After April transferred his interest in the property owned by the associates to Abramson as trustee, Abramson continued to treat the property so transferred as an interest in the property of a continuing partnership from which the assignee, until dissolution of the partnership, was entitled under section 53 of the Partnership Law (Cons. Laws, ch. 39) to receive only the *profits* to which the assigning partner would otherwise be entitled. The trustee did not reduce to possession and retain all the *proceeds* of the interest of the assignor in the property described in the assignment. Some of these proceeds were taken by the assignor.

The referee reported that in his opinion " no partnership existed between Levy, Abramson and April within the meaning of the Partnership Law," and the court at Special Term found " that the property transferred by the defendant April to the defendant Abramson was not the property of a partnership among the defendants April, Abramson, and said Joseph Levy, in which the defendant April had a residual " share. The Appellate Division has not reversed that finding. Our conclusion after scrutiny of the record is that the finding rests soundly upon the evidence presented.

Based upon that finding and upon evidence intended to show the property or money which, with proper diligence, the trustee should have reduced to possession and treated as part of the trust fund, the referee reported, and the court at Special Term found, that upon the accounting the trustee should be charged with assets valued at $180,272, subject to credits to which we shall refer hereafter, amounting to $124,443.54.

The Appellate Division fixed the amounts with which the trustee should be charged at $176,079 and the amounts which should be credited to the trustee at $162,339.25. Thus under the judgment entered upon the decision of the Appellate Division, the surcharge against the trustee is greatly reduced. In the charges against the trustee the Appellate Division of its own motion included an item of $4,452.24. There the court seems to have overlooked portions of the evidence which show that no such charge may properly be made against the trustee. The plaintiff did not claim such charge in the courts below and does not attempt to defend it in this court. Otherwise we agree with the decision of the Appellate Division in so far as it reduced the amount of the *charges* against the trustee. The increase by the Appellate Division of the amounts which should be credited to the trustee as an offset to these charges presents more serious questions.

The separation agreement and the assignment, made pursuant to that agreement, show quite clearly that the property was assigned in trust as security for the obligation of the assignor to pay to the plaintiff, his wife, $600 a month. The husband was under a further obligation to maintain the trust fund at an amount which would assure to the plaintiff at all times the payment of the stipulated sums. So long as the trust fund was sufficient security, the income might be used to satisfy the settlor's obligation to the plaintiff, but the trustee had no right to deplete the security by application of part of the principal of the trust fund to such payments, except as resort to security furnished by an obligor may be made after default in performance of the primary obligation. We have said that the defendant trustee erroneously treated the property transferred to him as if it had been the interest of a partner in a continuing partnership. From the bank account which belonged to the husband, the trustee and a third associate, and which stood in the name of the trustee, he drew the checks which for over four years

were used to meet the payments due to the plaintiff from her husband under the separation agreement. The trustee has been properly charged as trustee with the share in that bank account, which the husband assigned to him. He maintains that against this charge he should be credited with the moneys paid by him to the plaintiff from that account. The referee and the court at Special Term refused to allow that credit; the Appellate Division has allowed the trustee a credit in the amount of $29,400.

During the time that these payments were made, the trustee made no demand upon the husband for payment of the amount due from him to his wife, though for some, or all, of that time the husband had an income sufficient to meet this obligation. Perhaps the trustee was not under a duty to make such demand or to bring any proceedings to enforce it. We need not decide that now. At least the trustee's duty to the plaintiff under the trust instrument, made for her protection, required the trustee to refrain from doing anything which might deceive the plaintiff or even lull the plaintiff into oblivion of the husband's breach of his obligation or which would result in the depletion of the fund intended as security. The evidence establishes that the payments made by the trustee did produce these results, though as the Appellate Division has found, the trustee did not so intend or understand.

The trustee testified that he made these payments from the moneys in the bank account, because the husband said to him: " Pay it out of the funds and charge it to my account and then we will adjust it later on." Believing, as the trustee did, that in spite of the formal assignment by the husband of his share in the bank account, the account still remained the property of a continuing partnership, the trustee might also conclude that he was justified in accepting this direction from the assignor. The result was, none the less, that in using trust property, held as security for the settlor's obligation, to meet that obligation the trustee not only depleted the

security but led the plaintiff to refrain from compelling the settlor to carry out his obligation and to assign additional security for its performance. The evidence compels the conclusion that if the plaintiff had not during these four years received each month the amount that her husband had agreed to pay her and had not believed that her husband was carrying out his obligation, she might have compelled its performance by him and left intact the trust property held as security.

The Appellate Division, though recognizing that these payments depleted the trust fund *pro tanto*, nevertheless allowed the trustee credit for these items because the agreement provided that the " trustee shall not be liable or be held accountable for any mistakes or errors * * * in releasing any of said securities * * * or for any losses incurred or sustained, by reason of his having consented to act as such Trustee herein, except for wilful malfeasance," and also because the court construed the provision in the interlocutory judgment, directing the trustee to pay to the plaintiff " out of the income or principal of the trust funds in his hands " the sums stipulated in the separation agreement, as a conclusive adjudication, made at the instance of the plaintiff, that the trust instrument permitted the trustee to make the payments for which he claimed credit.

We construe the interlocutory judgment differently. Unquestionably, after default upon his obligation by the husband, resort might be had to both the principal and interest of the trust fund held as security for that obligation; but before default no payment could be made which would deplete the security and thwart the purpose for which the fund was created. This action is based upon a default by the husband, and the plain intent of the direction in the interlocutory judgment for payment by the trustee " out of the income or principal of said trust funds " is to permit resort to the security after breach of the obligation for which the security was given. It was not intended and should not be construed as an

adjudication inconsistent with the plaintiff's claim in the action and inconsistent with the opinion of the referee and the decision of the court. The payments were not authorized by the trust instrument or agreement, and the court never intended to hold that they were justified.

Then the only question which remains is whether the agreement confers immunity from liability upon the trustee. The stipulated immunity cannot reasonably extend to repudiation of trust duties or to acts or omissions which are not due to misconstruction of the rights and obligations created by the trust instrument. Here the trustee made the payments for which he claims credit, not because he found, through honest misreading of the letter of the agreement, supposed authority to make the payments, but because the assignor directed him to do so, and the trustee believed that the moneys were not subject to any trust. The courts below agreed that the exculpatory clause failed to confer immunity for the omission of the trustee to reduce to possession and retain as trustee all the proceeds of the property which had been assigned to him as trustee, though the trustee may have honestly believed that he was not under any trust duty in the premises. By parity of reasoning the exculpatory clause does not permit him to claim credit for payments made from the property assigned when such payments were made by direction of the assignor which were accepted because the trustee similarly believed he had no such trust duty in the premises.

In other respects we find no ground for disturbing the judgment of the Appellate Division. We cannot review the discretion of the courts below in imposing upon the trustee the costs and expenses of the accounting.

The judgment of the Appellate Division should be modified in accordance with this opinion and as so modified affirmed, without costs.

CRANE, Ch. J., O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgment accordingly.